■ In the Matter of CLARABELLE K., Appellant, v CHARLES J. CHRISTMAN, as Commissioner of the Otsego County Depart-

ment of Social Services, Respondent. [639 NYS2d 578] —Yesawich Jr., J.

Petitioner is the biological maternal grandmother of two children, Jonathan and Jessica, now four and two years old, respectively. In 1994, respondent removed the children from their mother's care, placed them in foster care, and filed a neglect petition against the mother, Grace L., who apparently later admitted having failed to provide proper care for the children. Although petitioner's parental rights with respect to Grace L. were terminated in 1985, she has evidently remained in contact with her daughter since that time, and now seeks visitation with Jonathan and Jessica, with whom, she contends, she has maintained a close and loving relationship since their respective births.

Because petitioner's parental rights were terminated, she is, respondent argues, essentially no longer the children's "grandmother", and therefore does not have standing to seek visitation. Alternatively, respondent urges that even if petitioner does have standing, visitation is not in the children's best interest. The Law Guardian, who declined to address the question of standing, recommended limited, supervised visitation with both children. After a hearing, Family Court found that petitioner has standing to seek visitation with Jonathan, due to the nature of her relationship with him, but not with Jessica, with whom she has spent significantly less time. The petition was ultimately denied, however, on the ground that Jonathan's best interests would not be served by visitation with petitioner. This appeal followed.

The circumstances here do not warrant conferring standing upon petitioner. Not only does the evidence demonstrate that her parental rights were terminated on grounds of abuse or neglect, but it is also evident that she has yet to grasp that she treated her children improperly, and she has not shown that she has taken any steps in the intervening 11 years to improve her parenting skills. Nor, as Family Court noted, did she recognize that her daughter was acting inappropriately with respect to Jonathan and Jessica, or take any active steps to intervene. Furthermore, although it appears that petitioner has visited regularly with Jonathan and, to a lesser extent, Jessica, the nature of her relationship with them is not such that it would clearly be detrimental to the children to deny continued contact. In sum, taking into account all relevant circumstances,

including the fact of, and the basis for, petitioner's loss of her parental rights, it cannot be said that this is a situation in which equity should intervene to permit petitioner to seek visitation (*see*, Domestic Relations Law § 72; *Matter of Emanuel S. v Joseph E.*, 78 NY2d 178, 182-183).

Moreover, even were standing to be accorded, we are not persuaded, given the facts outlined above, that Family Court abused its discretion in finding that visitation would not serve the best interests of the children in this case (*see*, *Lo Presti v Lo Presti*, 40 NY2d 522, 526-527).

Cardona, P. J., Casey and Spain, JJ., concur.

Peters, J. (concurring). While I agree with the conclusion reached by the majority, I do so on different grounds.

Domestic Relations Law § 72 provides, in derogation of the common law, that under certain circumstances a "grandparent" has standing to petition a court' for visitation with a grandchild, notwithstanding an objection raised by that child's parents (*see*, *Matter of Emanuel S. v Joseph E.*, 78 NY2d 178; *Matter of David M. v Lisa M.*, 207 AD2d 623). Since such rights have only been conferred pursuant to statute, the terms thereof must be strictly construed (*see*, *Matter of Hantman v Heller*, 213 AD2d 637; *Matter of David M. v Lisa M.*, *supra*).

Here, the parental rights of petitioner as to all four of her children, including Grace L., were terminated by an adversarial proceeding in 1985. Grace L. was eventually adopted and had two children of her own. These are the children with whom petitioner now seeks an order of visitation.

It is well settled that "[t]ermination denies the natural parents physical custody, as well as the rights ever to visit, communicate with, or regain custody of the child" (*Santosky v Kramer*, 455 US 745, 749). As Family Court was powerless to provide petitioner with an order granting her visitation with Grace L. subsequent to the termination of her parental rights, the court is now powerless to provide petitioner with an order permitting visitation with Grace L.'s children (*see*, *Matter of Rita VV.*, 209 AD2d 866, *lv denied* 85 NY2d 811).*

Since I find that petitioner is not a "grandparent" within the

---

* As of January 1, 1991, with the amendment of Social Services Law § 383-c, the method by which parental rights are terminated (*compare*, Social Services Law § 384-b, *with* Social Services Law § 383-c) affects the power of the court to permit contact between a parent and child (*Matter of Rita VV.*, *supra*). If termination occurs as a result of an adversarial proceeding, the court is *without authority* to provide for contact in the order of disposition (*supra*). Thus, notwithstanding the fact that Social Services Law § 383-c was not enacted at the time of the termination of petitioner's parental rights,

meaning of Domestic Relations Law § 72 (see, *Hantman v Heller, supra*; *Matter of David M. v Lisa M., supra*; *Matter of Anthony L. v Seymour S.*, 128 Misc 2d 1037), she has no right thereunder to seek visitation (see, *Matter of Santosky v Roach*, 161 AD2d 908, *lv dismissed* 76 NY2d 981).

Ordered that the order is affirmed, without costs.

had it been in existence, the adversarial nature of her proceeding would now preclude her from having standing to petition for visitation with her biological grandchildren pursuant to Domestic Relations Law § 72.